UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSEPH LABATTE and AMELIA MCDONALD,

    Plaintiffs,

v.

Case No: 6:17-cv-1913-Orl-40GJK

ACTING SECRETARY, DEPARTMENT OF HOMELAND SECURITY, ACTING DIRECTOR, CITIZENSHIP AND IMMIGRATION SERVICES, ACTING DISTRICT DIRECTOR, CITIZENSHIP AND IMMIGRATION SERVICES, TAMPA, FLORIDA and ACTING ORLANDO FIELD OFFICE DIRECTOR, CITIZENSHIP AND IMMIGRATION SERVICES,

    Defendants.
_____/

## ORDER

This cause comes before the Court without oral argument on Defendants' Motion to Dismiss (Doc. 19), filed February 23, 2018. Plaintiff responded in opposition on March 23, 2018. (Doc. 22). With briefing complete, the matter is now ripe. Upon consideration, the Complaint is due to be dismissed.

**I.    BACKGROUND**[1]

Plaintiff Joseph Labatte ("**Labatte**")—a Haitian citizen—entered the Unites States near Mona Isle, Puerto Rico, in June 2012. (Doc. 1, pp. 1, 4 ("**Complaint**")). Soon after,

---

[1] This account of the facts is taken from the Complaint (Doc. 1). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Labatte was apprehended by U.S. Customs and Border Protection ("**CBP**") officers. (*Id.* at p. 4). CBP determined Labatte was an "immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act [('**INA**')]." (Doc. 1-5). As such, Labatte was found inadmissible under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 212(a)(7)(A)(i)(I). (*Id.*). On July 5, 2012, CBP ordered the expedited removal of Labatte pursuant to INA § 235(b)(1) and 8 U.S.C. § 1225. (Doc. 1, p. 4).

Next, CBP transferred Labatte to the custody of Immigration and Customs Enforcement ("**ICE**"), which released him on July 25, 2012, subject to an order of supervision. (*Id.*). On January 9, 2013, an ICE Asylum Officer interviewed Labatte and found him "to have credible fear." (Doc. 1-5). On January 23, 2013, ICE issued a Notice for Labatte to appear before an Immigration Judge ("**IJ**"). (Doc. 19-1). The Notice charged that Labatte was subject to removal under INA § 212(a)(7)(A)(i)(I). (*Id.*).

On February 5, 2013, ICE issued a document that "paroled" Labatte into the United States for "8 C.F.R. 212(d)(5) Court Proceedings."[2] (Doc. 1, p. 5; Doc. 1-6). A February 1, 2013, letter from ICE similarly stated: "We have concluded that you [Labatte] meet the criteria for parole." (Doc. 1-5). Labatte thereafter filed a Form I-589, Application for Political Asylum and for Withholding of Removal on February 21, 2013. (Doc. 1, p. 5). On May 22, 2013, the IJ denied Labatte's Form I-589 application, and ordered Labatte be removed from the United States. (*Id.*).

---

[2] Plaintiff correctly points out that there is no regulation at 8 C.F.R. § 212(d)(5). The officer issuing the parole document likely intended to refer to INA § 212(d)(5), codified at 8 U.S.C. § 1182(d)(5). Section 1182(d)(5) authorizes the Attorney General to temporarily "parole" for "urgent humanitarian reasons or significant public benefit" an alien applying for admission into the United States.

On March 14, 2016, Labatte filed a Form I-485, Application to Register Permanent Residence or Adjust Status with the Department of Homeland Security, U.S. Customs and Immigration Services ("**USCIS**"). (Doc. 1, p. 1; Doc. 1-2). The same day, Labatte's wife, co-Plaintiff Amelia McDonald ("**McDonald**"), filed a Form I-130, Petition for Alien Relative, on his behalf. (Doc. 1, p. 2; Doc. 1-1).

On September 20, 2016, Labatte and McDonald reported to the USCIS field office in Orlando, Florida, for a scheduled interview. (Doc. 1, p. 4). After, the officer conducting the interview told them that a decision as to Labatte's immigration status was forthcoming. (*Id.*). Having not received a decision, Labatte and McDonald filed this action against several acting secretaries and field office directors of the Department of Homeland Security and USCIS seeking a writ of mandamus compelling Defendants to "reach a proper decision as to the Form I-130 and Form I-485," pursuant to the Administrative Procedures Act ("**APA**"), 5 U.S.C. §§ 701–06, and the Mandamus Act, 28 U.S.C. § 1361. (*Id.* at p. 8).

Defendants move to dismiss, charging that they lack jurisdiction to process Plaintiffs' applications for adjustment of status. (Doc. 19).

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Standard

Although Defendants invoke Federal Rules of Civil Procedure ("**Rule**") 12(b)(1) and 12(b)(6), the Court construes the motion as a motion to dismiss for failure to state a claim only under Rule 12(b)(6).[3]

---

[3] In essence, Defendants assert that *they* are without jurisdiction to adjudicate Plaintiffs' applications for adjustment of status. (Doc. 19, p. 1). Defendants do not contend that the Court lacks subject matter jurisdiction over this case.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," set forth in "numbered paragraphs each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 8(a), 10(b). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must also view the complaint in the light most favorable to the plaintiff and resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Mandamus

The APA authorizes district courts to review agency decisionmaking. Courts may only review "final agency action," which includes affirmative actions as well as an agency's "failure to act." 5 U.S.C. §§ 551(13), 704. Accordingly, district courts may compel agency action "unlawfully withheld or unreasonably delayed." *Id.* § 706(1). Such claims are viable only "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 529 U.S. 55, 64 (2004).

"Mandamus is proper if (1) the Plaintiffs can show a clear right to the relief sought; (2) the Defendants have a clear, non-discretionary duty to act; and (3) no other remedy is available." *Nyaga v. Ashcroft*, 323 F.3d 906, 911 (11th Cir. 2003).[4] The duty to act must

---

[4] The Mandamus Act vests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

4

be "simple, absolute, and definitive," and must not involve personal deliberation or judgment. *Kitchen v. CSX Transp., Inc.*, 6 F.3d 727, 732 (11th Cir. 1993).

## III. DISCUSSION

In their motion, Defendants contend that Labatte is not an "arriving alien," therefore his application for adjustment of status must be filed with an IJ. (Doc. 19, p. 5). Indeed, Labatte filed a Form I-589, Application for Political Asylum and for Withholding of Removal, which the IJ denied in 2013. (Doc. 1, p. 5). Defendants contend that the "order of removal became final when Plaintiff failed to file an appeal of the [IJ's] decision." (Doc. 19, p. 6). Furthermore, Defendants assert, the IJ possesses *exclusive* jurisdiction to adjudicate status adjustment applications filed by aliens in removal proceedings (other than "arriving aliens"). (*Id.*).[5] Importantly, Defendants aver that USCIS' decision to parole Labatte does not deprive the IJ of jurisdiction over Plaintiff's Form I-485. (*Id.*).

Plaintiffs contend that USCIS has jurisdiction over the Form I-485 because Labatte became an "arriving alien" for immigration law purposes when he was paroled into the United States. (Doc. 22, p. 4). The parties therefore primarily dispute whether the parole documents effected a change of Labatte's status to "arriving alien."

### A. Jurisdiction Depends on Immigrant Classification

Jurisdiction for Labatte's Form I-485 lies with either the IJ or Defendants (USCIS). The IJ has exclusive jurisdiction to adjudicate applications for adjustment of status by *any alien* placed in deportation or removal proceedings, *except* for applications filed by

---

[5] In this vein, Defendants aver in their dismissal motion that USCIS administratively closed Labatte's I-485 application for lack of jurisdiction. (Doc. 19, p. 2).

"arriving aliens." 8 C.F.R. § 1245.2(a)(1)(i).[6] USCIS has jurisdiction to adjudicate status adjustment applications filed by arriving aliens (including those in removal proceedings). 8 C.F.R. § 245.2(a)(1); *see also Brito v. Mukasey*, 521 F.3d 160, 166 (2d Cir. 2008); *Scheerer v. U.S. Attorney Gen.*, 513 F.3d 1244, 1251, 1251 n.6 (11th Cir. 2008).

### B. Labatte Is Not an Arriving Alien

Plaintiffs' case depends on Labatte being classified an arriving alien. If Labatte is not an arriving alien, the IJ has exclusive jurisdiction over his adjustment of status applications, as discussed *supra*. If Labatte is an arriving alien, then Plaintiffs' claims against the USCIS Defendants may proceed.

Defendants maintain that Labatte's status remains as an "alien without inspection" despite being temporarily paroled. (Doc. 19, pp. 4–6). In support, they cite the definition of "arriving alien:"

> The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.

8 C.F.R. § 1.2. It is undisputed that Labatte does not meet the definition of arriving alien established by the first sentence of § 1001.1(q). (Docs. 19, 22).

Nonetheless, Plaintiffs argue that Labatte *became* an arriving alien when he was paroled into the United States in 2013. (Docs. 1, 1-6, 22). In support, Plaintiffs emphasize the second sentence of § 1001.1(q). (Doc. 22, pp. 5–6). According to Plaintiffs, that

---

[6] Section 1245.2(a)(1)(ii) sets forth parameters wherein the IJ has jurisdiction to adjudicate adjustment applications filed by arriving aliens. Neither Plaintiffs nor Defendants contend that § 1245.2(a)(1)(ii) applies here.

6

sentence confers arriving alien status upon aliens of any status who are paroled by the Attorney General. Such a strained interpretation of § 1001.1(q) is untenable and unsupported by caselaw.[7] That sentence simply instructs that an arriving alien's status does not change by virtue of the grant and/or termination of parole. It does not, as Plaintiffs argue, vest any paroled alien with "arriving alien" status by virtue of their parole.

Accordingly, Labatte is not an arriving alien, therefore his application for adjustment of status is within the exclusive jurisdiction of the IJ. The Complaint against the Department of Homeland Security and USCIS Defendants is due to be dismissed.

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** that Defendants' Motion to Dismiss (Doc. 19) is **GRANTED**. The Complaint (Doc. 1) is **DISMISSED**. The Clerk of Court is directed to terminate all pending deadlines and close the file.

**DONE AND ORDERED** in Orlando, Florida on June 16, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[7] In their Response to Defendants' motion to dismiss, Plaintiffs fail to cite a single case applying their recommended interpretation of § 1001.1(q).